**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IOT INNOVATIONS LLC,<br>Plaintiff,<br>v.<br>CHAMBERLAIN GROUP LLC,<br>Defendant. | Civil Action No. 1:26-cv-10653<br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff IoT Innovations LLC ("IoT Innovations" or "Plaintiff") files this Complaint against Chamberlain Group LLC ("Chamberlain" or "Defendant"), alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1. This is a patent infringement action to stop Defendant's infringement of the following United States Patents (the "Asserted Patents") issued by the United States Patent and Trademark Office ("USPTO"), copies of which are available, respectively, at the links below:

| | U.S. Patent No. | Title | Available At |
|---|---|---|---|
| A. | 7,161,960 | Apparatus, and Associated Method, For Forming, and Operating Upon, Multiple-Checksum-Protected Data Packet | USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7161960 |
| B. | 7,209,876 | System and Method for Automated Answering of Natural Language Questions and Queries | USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7209876 |
| C. | 7,246,173 | Method And Apparatus For Classifying IP Data | USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7246173 |

| | U.S. Patent No. | Title | Available At |
|---|---|---|---|
| D. | 7,280,830 | Automatic Registration Services Provided Through A Home Relationship Established Between A Device And A Local Area Network | USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7280830. |
| E. | 9,008,055 | Automatic Remote Services Provided By A Home Relationship Between A Device and A Server | USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/9008055 |
| F. | RE44,742 | Dynamic Message Templates And Messaging Macros | USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/RE44742 |

2. IoT Innovations seeks injunctive relief and monetary damages.

**PARTIES**

3. IoT Innovations is a limited liability company formed under the laws of Texas with a registered office address located in Austin, Texas (Travis County).

4. Based upon public information, Chamberlain Group LLC is a limited liability company organized and existing under the laws of the State of Illinois with its primary place of buisness located at 300 Windsor Drive, Oak Brook, IL 60523.

5. Upon information and belief, Defendant owns, operates, advertises, and/or controls at least the websites www.chamberlaingroup.com, www.chamberlain.com, and www.enterprise.myq.com (and related domains), through which it advertises, sells, offers to sell, provides, and/or educates customers about its products and services, including the Accused Products.

6. Defendant may be served thorugh its regsitered agent C T Corporation System located at 208 S Lasalle St, Suite 814, Chicago, IL 60604-1101, at Defendant's regular and established

business, or anywhere Defendant can be found.

## JURISDICTION AND VENUE

7. IoT Innovations repeats and re-alleges the allegations in the preceding paragraphs as though fully set forth in their entirety.

8. This is an action for infringement of United States patents arising under 35 U.S.C. §§ 271, 281, and 284–85, among others. This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

9. Defendant is a domestic corporation incorporated under the laws of Illinois with its principal place of business in Oak Brook, Illinois. Venue is proper in this District under 28 U.S.C. § 1400(b) because Defendant has committed acts of infringement in this District and has a regular and established place of business in this District. *See In re: Cray Inc.*, 871 F.3d 1355 (Fed. Cir. 2017).

10. Defendant offers products and services, including through the use and/or testing of the Accused Products, and conducts business in this District.

11. Defendant is subject to this Court's specific and general personal jurisdiction under due process and/or the Illinois Long Arm Statute due at least to Defendant's substantial business in this judicial District, including: (i) At least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in Illinois and in this District.

12. Specifically, Defendant intends to do and does business in, has committed acts of infringement in, and continues to commit acts of infringement in this District directly, through intermediaries, by contributing to and through inducement of third parties, and offers its products

or services, including those accused of infringement here, to customers and potential customers located in Illinois, including in this District.

13. Upon information and belief, Defendant owns, operates, manages, conducts business, and directs and controls the operations and employees of facilities at several locations in this District, including, but not limited to facilities at the following addresses: 300 Windsor Drive, Oak Brook, IL 60523.

14. Defendant uses these facilities to sell and distribute its products including the Accused Products as described below.

15. Defendant commits acts of infringement from this District, including, but not limited to, importing, selling, offering, selling, offering for sale, importing, using, installing, and/or testing of the Accused Products, and inducement of third parties to use the Accused Products in an infringing manner.

**THE ACCUSED PRODUCTS**

16. IoT Innovations repeats and re-alleges the allegations in Paragraphs above as though fully set forth in their entirety.

17. Based upon public information, Defendant owns, operates, and/or controls the websites and domains www.chamberlaingroup.com, www.chamberlain.com, and www.enterprise.myq.com (and related domains), through which it advertises, sells, offers to sell, provides and/or educates customers about its products and services.

18. Defendant makes, uses, causes to be used, sells, offers for sale, provides, supplies, and/or distributes its cloud-based platform and AI platform solutions **myQ Enterprise Dock Management platform, including its Dock Management software and associated web and mobile interfaces; the myQ Smart Garage Control (model MYQ-G0401-ESMC); the Smart**

**Garage Control Hub; the myQ mobile application; compatible door sensors; compatible myQ-enabled garage door openers; the myQ Smart Garage Video Keypad (model MYQ-K40TXXW); the Chamberlain Amber AI assistant; the Secure View™ Camera Ultra-Quiet LED Wi-Fi Battery Backup Garage Door Opener; the Ultra-Quiet Wi-Fi® Battery Backup Garage Door Opener; the Wall Mount Ultra-Quiet Wi-Fi® Garage Door Opener with Battery Backup; the Chain Drive Wi-Fi Garage Door Opener; the Corner to Corner Lighting™ LED Wi-Fi Ultra-Quiet Battery Backup Garage Door Opener; the 1-1/4 HP Belt Drive Opener with Battery Backup, Built-In Camera, and myQ Connectivity; the LiftMaster Smart Garage Control; the LiftMaster Smart Garage Camera (model MYQ-SGC1WLM); and LiftMaster garage door opener models 87802, 87504-267, 85870, 84602, 84505R, 84504R, 6690L, 4690L, 2220L, 2420L, 83650-267, 6580L, and B4613T** and other substantially similar products and services offered in the past or the future, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions (collectively, the "Accused Products").

19. Defendant also instructs its customers, agents, employees, and affiliates regarding how to use the Accused Products.

20. For these reasons and the additional reasons detailed below, the Accused Products practice at least one claim of each of the Asserted Patents.

**COUNT I: INFRINGEMENT OF U.S. PATENT NO. 7,161,960**

21. Plaintiff repeats and re-alleges the allegations in Paragraphs 1-20 above as though fully set forth in their entirety.

22. The USPTO duly issued U.S. Patent No. 7,161,960 (hereinafter, the "'960 patent") on

January 9, 2007, after full and fair examination of Application No. 10/106,468, which was filed on March 26, 2002. *See* '960 patent at p. 1.

23. IoT Innovations owns all substantial rights, interest, and title in and to the '960 patent, including the sole and exclusive right to prosecute this action and enforce the '960 patent against infringers and to collect damages for all relevant times.

24. IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '960 patent.

25. The claims of the '960 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function, operation, and security of data communications by providing multiple, dynamically-selected checksum protection to data packets communicated between communication stations, enabling increased flexibility and reliability of data transmission across networks.

26. The written description of the '960 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

27. Defendant has directly infringed one or more claims of the '960 patent by using, providing, supplying, or distributing the Accused Products.

28. As just one example, Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 16 of the '960 patent, as detailed in Exhibit A (Evidence of

Use Regarding Infringement of U.S. Patent No. 7,161,960).

29. As shown in Exhibit A, Defendant, through the use and provision of the Accused Products, performs a method of communicating in a packet communication system having a first communication station for sending data formatted into a packet-formatted data packet pursuant to a selected packet formatting protocol upon a communication channel, the packet-formatted data packet having a header part and a payload part, an improvement of a method for selectably protecting a first selected portion of the data packet by a first selected checksum and at least a second selected portion of the data packet by a second selected checksum, said method comprising: selecting a first part of the data used to form the packet-formatted data packet to form the first selected portion to be protected by a first checksum and at least a second part of the data used to form the packet-formatted data packet to form the at least the second selected portion; performing a first checksum calculation upon the first part and at least a second checksum calculation upon the at least the second part; and formatting the data into a packet-formatted data packet to include a first portion identifying the first selected portion and indicia associated with the first selected checksum and at least a second portion identifying the second selected portion and indicia associated with the at least the second selected checksum.

30. IoT Innovations has been damaged as a result of the infringing conduct by Defendant as alleged above. Thus, Defendant is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT II: INFRINGEMENT OF U.S. PATENT NO. 7,209,876**

31. Plaintiff repeats and re-alleges the allegations in Paragraphs 1-20 above as though fully set forth in their entirety.

32. The USPTO duly issued U.S. Patent No. 7,209,876 (hereinafter, the "'876 patent") on April 24, 2007, after full and fair examination of Application No. 10/293,743, which was filed on November 13, 2002. *See* '876 patent at p. 1.

33. IoT Innovations owns all substantial rights, interest, and title in and to the '876 patent, including the sole and exclusive right to prosecute this action and enforce the '876 patent against infringers and to collect damages for all relevant times.

34. IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '876 patent.

35. The claims of the '876 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of information retrieval systems by providing an automated method for answering natural language questions and queries, including transforming a natural language question into one or more expected answer forms, searching an information repository for answer phrases that syntactically match the expected answer forms, and rendering direct natural language answers to the user without requiring specialized search query formulation.

36. The written description of the '876 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

37. Defendant has directly infringed one or more claims of the '876 patent by using,

providing, supplying, or distributing the Accused Products.

38. As just one example, Defendant has directly infringed, either literally or under the doctrine of equivalents, claim 1 of the ’876 patent, as detailed in Exhibit B (Evidence of Use Regarding Infringement of U.S. Patent No. 7,209,876).

39. As shown in Exhibit B, Defendant, through the use and provision of the Accused Products, performs a method for producing answers to a question or query issued to an information repository containing natural language data, executable in a computer system, comprising the steps of: a. receiving a search question or query containing at least one variable expression, said at least one variable expression being representative of desired answer data that is to be searched for in said information repository; b. initiating a search of said information repository for information containing terms present in said search question or query and receiving a first data set comprising information containing terms present in said search question or query; c. searching said first data set for answer phrases present in syntactically similar form to said search question or query and containing answer data which may replace said variable expression to provide an answer to said search question or query, and retrieving answer phrases resulting from such search; and d. modifying said answer phrases and providing output derived from said answer phrases in the form of one or more direct answers to said search question or query.

40. IoT Innovations has been damaged as a result of the infringing conduct by Defendant as alleged above. Thus, Defendant is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT III: INFRINGEMENT OF U.S. PATENT NO. 7,246,173**

41. Plaintiff repeats and re-alleges the allegations in Paragraphs 1-20 above as though fully

set forth in their entirety.

42. The USPTO duly issued U.S. Patent No. 7,246,173 (hereinafter, the "'173 patent") on July 17, 2007, after full and fair examination of Application No. 09/834,918, which was filed on April 16, 2001. *See* '173 patent at 1.

43. IoT Innovations owns all substantial rights, interest, and title in and to the '173 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

44. IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '173 patent.

45. The claims of the '173 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of IP data classification systems and methods in packet switch networks.

46. The written description of the '173 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

47. Defendant has directly infringed one or more claims of the '173 patent by using, providing, supplying, or distributing the Accused Products.

48. As just one example, Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '173 patent, as detailed in Exhibit C (Evidence of

Use Regarding Infringement of U.S. Patent No. 7,246,173).

49. As shown in Exhibit C, Defendant, through the use and provision of the Accused Products, performs a method of classifying Internet Protocol (IP) data to be sent from a source apparatus to a destination apparatus in a packet switched network, said method comprising: receiving said data at a first node, the data comprising a header comprising a list of at least one intermediate node to be visited on a way to the destination apparatus; and classifying said data at said first node based on an entry in said header.

50. IoT Innovations has been damaged as a result of the infringing conduct by Defendant as alleged above. Thus, Defendant is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 7,280,830**

51. Plaintiff repeats and re-alleges the allegations in Paragraphs 1-20 above as though fully set forth in their entirety.

52. The USPTO duly issued U.S. Patent No. 7,280,830 (hereinafter, the "'830 patent") on October 9, 2007 after full and fair examination of Application No. 10/859,735 which was filed on June 2, 2004. *See* '830 patent at p. 1.

53. IoT Innovations owns all substantial rights, interest, and title in and to the '830 patent, including the sole and exclusive right to prosecute this action and enforce the '830 patent against infringers and to collect damages for all relevant times.

54. IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '830 patent.

55. The claims of the ’830 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of automatic registration of a new device through the establishment of a home relationship with a network server.

56. The written description of the ’830 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

57. Defendant has directly infringed one or more claims of the ’830 patent by using, providing, supplying, or distributing the Accused Products.

58. As just one example, Defendant has directly infringed, either literally or under the doctrine of equivalents, claim 1 of the ’830 patent, as detailed in Exhibit D (the Evidence of Use Regarding Infringement of U.S. Patent No. 7,280,830).

59. As shown in Exhibit D, Defendant, through the use and provision of the Accused Products, performs a method for automatic registration of a new wireless device with a registration server, comprising: establishing a home relationship between the new wireless device and a network server, such that no additional configuration is required by a user of the new device to communicate over a network once the relationship is established, wherein establishing a home relationship includes, determining at the network server, that the wireless device is an owned device, wherein the owned device is previously known to the network server; automatically obtaining registration information for the new device; establishing a connection between a registration server and the network server; and sending the registration information from the

network server to the registration server.

60. IoT Innovations has been damaged as a result of the infringing conduct by Defendant as alleged above. Thus, Defendant is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT V: INFRINGEMENT OF U.S. PATENT NO. 9,008,055**

61. Plaintiff repeats and re-alleges the allegations in Paragraphs 1-20 above as though fully set forth in their entirety.

62. The USPTO duly issued U.S. Patent No. 9,008,055 (hereinafter, the "'055 patent") on April 14, 2015, after full and fair examination of Application No. 10/903,931, which was filed on July 29, 2004. *See* '055 patent at p. 1.

63. IoT Innovations owns all substantial rights, interest, and title in and to the '055 patent, including the sole and exclusive right to prosecute this action and enforce the '055 patent against infringers and to collect damages for all relevant times.

64. IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '055 patent.

65. The written description of the '055 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

66. The claims of the '055 patent are not directed to an abstract idea and are not limited to

well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function, operation, and security of communications devices and networks by employing an improved network protocol that enables the establishment of a known, persistent relationship between a mobile wireless device and a wireless network that allows the device to communicate over the network absent further configuration once the relationship has been established.

67. Defendant has directly infringed and continues to directly infringe one or more claims of the ’055 patent by using, providing, supplying, or distributing the Accused Products.

68. As just one example, Defendant has directly infringed and continues to infringe, either literally or under the doctrine of equivalents, claim 1 of the ’055 patent, as detailed in Exhibit E (Evidence of Use Regarding Infringement of U.S. Patent No. 9,008,055).

69. As shown in Exhibit E, Defendant, through the use and provision of the Accused Products, performs a method for automatically providing remote services for a mobile device having an established relationship with a server of a home network, comprising: receiving, by the server, information that was stored in the mobile device when the established relationship was established when the mobile device establishes an Internet connection through a local network that is separate and remote from the home network, wherein establishing the established relationship includes allowing the user to set preferences that identifies at least one service that is automatically performed between the mobile device and the server when a connection is made; and if the mobile device is recognized through the received information, automatically activating at least one function within the server to initiate a transfer of data between the mobile device and the server through the local network.

70. IoT Innovations has been damaged as a result of the infringing conduct by Defendant

as alleged above. Thus, Defendant is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

71. IoT Innovations has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law. IoT Innovations has and will continue to suffer this harm by virtue of Defendant's infringement of the '055 patent. Defendant's actions have interfered with and will interfere with IoT Innovations' ability to license technology. The balance of hardships favors IoT Innovations' ability to commercialize its own ideas and technology. The public interest in allowing IoT Innovations to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

72. Defendant had knowledge of the '055 patent at least as of the date when it was notified of the filing of this action.

73. Upon information and belief, Defendant has also indirectly infringed one or more claims of the '055 patent by inducing others to directly infringe said claims.

74. Defendant has induced end-users, including, but not limited to, Defendant's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '055 patent by providing or requiring use of the Accused Products.

75. Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '055 patent, including, for example, claim 1 of the '055 patent.

76. Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing

instructions that guide users to use the Accused Products in an infringing manner; and/or providing ongoing instructional and technical support to customers on how to use the Accused Products in an infringing manner.

77. Defendant is performing these steps, which constitute induced infringement with the knowledge of the ’055 patent and with the knowledge that the induced acts constitute infringement.

78. Defendant is aware that the normal and customary use of the Accused Products by others would infringe the ’055 patent.

79. Defendant’s inducement is ongoing.

80. Upon information and belief, Defendant has also indirectly infringed by contributing to the infringement of the ’055 patent.

81. Defendant has contributed to the direct infringement of the ’055 patent by their personnel, contractors, and customers.

82. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the ’055 patent, including, for example, claim 1 of the ’055 patent. The special features constitute a material part of the invention of one or more of the claims of the ’055 patent and are not staple articles of commerce suitable for substantial non-infringing use. In fact, as shown in Exhibit E, the primary purpose of the Accused Products is to act and operate in a way that infringes the ’055 patent.

83. Defendant’s contributory infringement is ongoing.

84. Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of IoT Innovations’ patent rights.

85. Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

86. Defendant's direct infringement of one or more claims of the '055 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of IoT Innovations' rights under the patent.

**COUNT VI: INFRINGEMENT OF U.S. PATENT NO. RE44,742**

87. Plaintiff repeats and re-alleges the allegations in Paragraphs 1-20 above as though fully set forth in their entirety.

88. The USPTO duly issued U.S. Patent No. RE44,742 (hereinafter, the "'742 patent") on February 4, 2014 after full and fair examination of Application No. 13/542,351 which was filed on July 5, 2012. *See* '742 patent at 1. The '742 patent is a reissue of U.S. Patent No. 7,751,533. *See id.* at 12.

89. IoT Innovations owns all substantial rights, interest, and title in and to the '742 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

90. IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '742 patent.

91. The written description of the '742 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

92. The claims of the ’742 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting template-based messaging systems.

93. Defendant has directly infringed and continues to directly infringe one or more claims of the ’742 patent by using, providing, supplying, or distributing the Accused Products.

94. As just one example, Defendant has directly infringed and continues to infringe, either literally or under the doctrine of equivalents, claim 1 of the ’742 patent, as detailed in Exhibit F (Evidence of Use Regarding Infringement of U.S. Patent No. RE44,742).

95. As shown in Exhibit F, Defendant, through the use and provision of the Accused Products, performs a method comprising: executing an application at a device, wherein message context data including message context data items is associated with the executing application; selecting a selected message context data item from the message context data associated with the executing application; and automatically inserting the selected message context data item in a dynamic field of a template to facilitate the creation of a message to send from the device.

96. IoT Innovations has been damaged as a result of the infringing conduct by Defendant as alleged above. Thus, Defendant is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

97. IoT Innovations has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law. IoT Innovations has and will continue to suffer this harm by virtue of Defendant’s infringement of the ’742 patent. Defendant’s actions have interfered with and will interfere with IoT Innovations’ ability to license technology. The

balance of hardships favors IoT Innovations' ability to commercialize its own ideas and technology. The public interest in allowing IoT Innovations to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

98. Defendant had knowledge of the '742 patent at least as of the date when it was notified of the filing of this action.

99. Upon information and belief, Defendant has also indirectly infringed one or more claims of the '742 patent by inducing others to directly infringe said claims.

100. Defendant has induced end-users, including, but not limited to, Defendant's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '742 patent by providing or requiring use of the Accused Products.

101. Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '742 patent, including, for example, claim 1 of the '742 patent.

102. Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner; and/or providing ongoing instructional and technical support to customers on how to use the Accused Products in an infringing manner.

103. Defendant is performing these steps, which constitute induced infringement with the knowledge of the '742 patent and with the knowledge that the induced acts constitute infringement.

104. Defendant is aware that the normal and customary use of the Accused Products by others would infringe the '742 patent.

105. Defendant's inducement is ongoing.

106. Upon information and belief, Defendant has also indirectly infringed by contributing to the infringement of the '742 patent.

107. Defendant has contributed to the direct infringement of the '742 patent by its personnel, contractors, and customers.

108. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '742 patent, including, for example, claim 1 of the '742 patent. The special features constitute a material part of the invention of one or more of the claims of the '742 patent and are not staple articles of commerce suitable for substantial non-infringing use. In fact, as shown in Exhibit F, the primary purpose of the Accused Products is to act and operate in a way that infringes the '742 patent.

109. Defendant's contributory infringement is ongoing.

110. Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus has been willfully blind of IoT Innovations' patent rights.

111. Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

112. Defendant's direct infringement of one or more claims of the '742 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of IoT Innovations' rights under the patent.

**JURY DEMAND**

113. IoT Innovations hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

114. IoT Innovations requests that the Court find in its favor and against Defendant, and that the Court grant IoT Innovations the following relief:

a. Judgment that one or more claims of each of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by Defendant or others acting in concert therewith;

b. A permanent injunction enjoining Defendant and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringement of the ’055 patent and the ’742 patent; or, in the alternative, an award of a reasonable ongoing royalty for future infringement of said patents by such entity;

c. Judgment that Defendant account for and pay to IoT Innovations all damages to and costs incurred by IoT Innovations because of Defendant’s infringing activities and other conduct complained of herein;

d. Judgment that Defendant’s infringements be found willful as to the ’055 patent and the ’742 patent, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

e. Pre-judgment and post-judgment interest on the damages caused by Defendant’s infringing activities and other conduct complained of herein;

f. That this Court declare this an exceptional case and award IoT Innovations its reasonable attorneys’ fees and costs in accordance with 35 U.S.C. § 285; and

g. All other and further relief as the Court may deem just and proper under the circumstances.

Dated: September 2, 2026

Respectfully submitted,

*/s/ Andrew Gordon-Seifert*

Andrew Gordon-Seifert (IL 6348474)
**ROZIER HARDT MCDONOUGH PLLC**
1500 K Street, 2nd Floor
Washington, District of Columbia 20005
Telephone: (401) 954-7420
Email: andrew@rhmtrial.com

***Attorneys for Plaintiff IoT INNOVATIONS LLC***

**Exhibits**

A. Evidence of Use Regarding Infringement of U.S. Patent No. 7,161,960

B. Evidence of Use Regarding Infringement of U.S. Patent No. 7,209,876

C. Evidence of Use Regarding Infringement of U.S. Patent No. 77,246,173

D. Evidence of Use Regarding Infringement of U.S. Patent No. 7,280,830

E. Evidence of Use Regarding Infringement of U.S. Patent No. 9,008,055

F. Evidence of Use Regarding Infringement of U.S. Patent No. RE44,742